UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JLC BEECHTREE, INC., )
 )
    Plaintiff, )
 )
v. ) No.: 3:10-CV-523
 ) (VARLAN/GUYTON)
A&E HEALTHCARE OF TENNESSEE, LLC and )
SYNERGY HEALTHCARE SERVICES, LLC, )
 )
    Defendants. )

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Partial Summary Judgment [Doc. 12] by defendants A&E Healthcare of Tennessee, LLC ("A&E") and Synergy Healthcare Services, LLC ("Synergy") in which defendants move the Court for judgment as a matter of law with respect to plaintiff's claims for fraud and breach of contract against A&E and all of plaintiff's claims against Synergy, on grounds that there are no genuine issues of material fact in dispute. Plaintiff requested and was granted extensions of time to file a response to the motion for partial summary judgment. No response was filed, however, and the time for doing so, including the granted extensions, has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. Pursuant to Local Rule 7.2, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2.

After careful consideration of the complaint, the motion for partial summary judgment, and the relevant law, and for the reasons set forth herein, defendants' partial motion for summary judgment [Doc. 12] will be **GRANTED in part** and **DENIED in part**.

**I.      Facts**

Plaintiff filed the complaint initiating this action in the Chancery Court for Campbell County, Tennessee [Doc. 1-1] alleging wrongful retention and/or unlawful conversion, fraud, unjust enrichment, and breach of contract arising out of a series of agreements between and among plaintiff, A&E, Synergy, and Jellico Medical Inventors, Inc. ("Jellico Medical") [Doc. 1-1]. Defendants removed the state-court action to this Court pursuant to 28 U.S.C. § 1441[Doc. 1].

On or about May 1, 2005, A&E entered into a lease agreement ("Lease Agreement") with Jellico Medical through which A&E obtained the leasing rights to Beech Tree Manor, a nursing home [Doc. 1-1, ¶ 6; Doc. 14, p. 22, ¶ 6; Doc. 14, Ex. 1]. The Lease Agreement, which states that it expires on or about April 30, 2009, includes a Tennessee choice of law provision [Doc. 14, p. 22, ¶ 6, Ex. 1]. Synergy does not appear to be a party or a provider of services under the Lease Agreement [*Id.*, p. 3, Ex. 1].

On or about April 9, 2009, A&E and plaintiff entered into an interim agreement ("Interim Agreement"), part of which describes how A&E and plaintiff are to be paid for services provided by each entity during the period each was responsible for the operation of the Beech Tree Manor and until plaintiff obtained its own Medicaid and Medicare provider numbers [*Id.*, p. 22, ¶ 7, Ex. 2]. Synergy does not appear to be a party to the Interim

Agreement and does not appear to provide services or be entitled to receipt of payments from A&E, Jellico Medical, or plaintiff under the agreement [*Id.*, p. 3, Ex. 2].[1]

On or about May 1, 2009, plaintiff and Synergy entered into a management agreement ("Management Agreement") which describes management services Synergy provided plaintiff at the Beech Tree Manor from May 1, 2009 until the expiration of the Management Agreement on June 30, 2009 [*Id.*, p. 22, ¶ 8, Ex. 3]. In exchange for management services provided by Synergy, the Management Agreement requires plaintiff to pay Synergy "a Management Fee equal to 6% of revenues generated through the Facility's operations." [*Id.*]. The Management Agreement does not contain a provision obligating Synergy to make payments to plaintiff [*Id.*, pp. 3-4, Ex. 3]. The Management Agreement also provides that the agreement would be "construed and enforced" in accordance with the laws of the state of Florida [*Id.*, p. 22, ¶ 8, Ex. 3]. A&E does not appear to be a party to the Management Agreement and does not appear to provide services or receive payments from plaintiff or Synergy under the agreement [*Id.*, pp. 3-4, Ex. 3].

Plaintiff alleges that as of October 29, 2010, an audit of accounts relative to the above-mentioned agreements showed that A&E and Synergy are jointly and severally indebted to

---

[1]In the partial motion for summary judgment, defendants submit that "A&E and Jellico Medical entered into the Interim Agreement that involved . . . how A&E and [plaintiff] would be paid for services[.] [Doc. 14, p. 4, Ex. 2]. However, after a review of the Interim Agreement, the Court does not find it to support this proposition. The signators of the Interim Agreement are A&E and plaintiff, not A&E and Jellico Medical [Doc. 14, Ex. 2, pp. 50-51]. Jellico Medical is only mentioned in the Interim Agreement in the first paragraph, which states that the Lease Agreement between A&E and Jellico Medical terminates on April 30, 2009, at which time A&E will cease as the operator of the Beech Tree Manor [*Id.*, p. 47].

3

plaintiff in the amount of $103,358.58 [Doc. 1-1, ¶ 11]. Plaintiff alleges this amount was retained by A&E and Synergy to their own use and benefit, jointly and severally, that such retention is wrongful, and that it constitutes fraud and unjust enrichment [*Id.*, p. 7]. In the motion for partial summary judgment [Doc. 12], defendants requests that the Court grant summary judgment to defendants on plaintiff's fraud and breach of contract claims against A&E, and grant summary judgment to defendants on all plaintiff's claims against Synergy [Doc. 14, ¶¶ 6, 8, Exs. 1, 3].

**II.     Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact

4

could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

    **A. Partnership**

Plaintiff alleges that at all material times, A&E and Synergy were a partnership in connection with the Lease Agreement, the Interim Agreement, and the Management Agreement, and the Court should disregard the corporate veil and hold defendants jointly and severally liable to plaintiff for indebtedness in the amount of $103,359.58 [Doc. 1-1, ¶ 5]. Defendants assert that A&E and Synergy are neither common law nor statutory partners and that plaintiff's attempt to pierce either defendants' corporate veils is without merit. Defendants contend that plaintiff has not alleged or submitted any facts indicating or showing

5

Case 3:10-cv-00523 Document 18 Filed 05/23/12 Page 5 of 19 PageID #: 188

that A&E and Synergy were part of a partnership in connection with any of the agreements described in the complaint. Defendants also contend that plaintiff has pointed to no facts showing that A&E and Synergy are not separate and distinct legal entities operating independently of one another.

A partnership under Tennessee law has been defined by the Tennessee legislature as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit." " *Story v. Lanier*, 166 S.W.3d 167, 175-76 (Tenn. Ct. App. 2004) (citing Tenn. Code Ann. § 61-1-101(6)). The Tennessee Court of Appeals has explained a partnership as follows:

> In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. *Roberts v. Lebanon Appliance Service Co.*, 779 S.W.2d 793, 795 (Tenn.1989). If the parties' business brings them within the scope of a joint business undertaking for mutual profit–that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them–the result is a partnership whether or not the parties understood that it would be so. *Pritchett v. Thomas Plater & Co.*, 232 S.W. 961, 969-70 (1921).
>
> Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. *Wyatt v. Brown*, 281 S.W.2d 64, 67 (1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. *Wyatt*, 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. *Roberts*, 779 S.W.2d at 795-96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their

6

> purpose to create or avoid the relationship. *Wyatt*, 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Via v. Oehlert*, 347 S.W.3d 224, 229 (Tenn. Ct. App. 2010) (quoting *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). *See also* Tenn. Code Ann. § 61-1-101(6).

The Court has reviewed the agreements that are the subject of plaintiff's claims and notes that A&E and Synergy were not parties to the same agreements [Doc. 14, Exs. 1-3]. In addition, according to the declaration of Maria Elva Gonzalez ("Gonzalez declaration"), the chief financial officer and treasurer of Synergy, during the time period of the parties' involvement in the agreements, A&E and Synergy were each responsible for funding their own operations, the entities did not share bank accounts, and neither entity provided services in connection with the agreements to which they were not parties [Doc. 14, ¶¶ 6-8]. Furthermore, beyond the allegations contained in the complaint, plaintiff has not submitted a response to defendants' motion or presented the Court with any other facts regarding the existence of a partnership relationship between A&E and Synergy. Accordingly, upon the Court's consideration of a "partnership" under Tennessee law, as discussed in *Via*, the contents of the Gonzalez declaration, the allegations of the complaint, and the contents of the agreements, the Court concludes that the facts and circumstances of this case do not support a finding of a partnership between A&E and Synergy.

7

### B.     Piercing the Corporate Veil

"A corporation is usually treated as a separate entity." *Post Sign Co. v. Jemc's, Inc.*, 342 S.W.2d 385, 390 (1960); *see* 18 Am. Jur. 2d, Corporations § 42 at 840 (1985). This presumption, however, will be quickly disregarded upon a showing that the corporation is a mere sham or dummy. *Post Sign Co.*, 342 S.W.2d at 390 (citing *Fid. Trust Co. v. Serv. Laundry Co.*, 22 S.W.2d 6 (1929)); *see Dillard & Coffin Co. v. Richmond Cotton Oil Co.*, 204 S.W. 758 (1918); *Tenn. Consol. Coal Co. v. Home Ice & Coal Co.*, 156 S.W.2d 454 (1941). "The party wishing to negate the existence of separate legal entities has the burden of proving facts sufficient to justify piercing the corporate veil." *McConkey v. McGhan Med. Corp.*, 144 F. Supp. 2d 958, 963 (E.D. Tenn. 2000) (citing 18 C.J.S., Corporations § 18 at 290 (1990)). In *Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, the Tennessee Supreme Court articulated a three-part test to determine, in the case of parent and subsidiary corporations, whether a corporation was a mere instrumentality of another and whether piercing the corporate veil was warranted:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

8

578 S.W.2d 625, 632 (Tenn.1979) (paraphrasing *Lowendahl v. Baltimore & O.R. Co.*, 247 A.D. 144, 287 N.Y.S. 62 (1936)).

In *Fed. Dep. Ins. Corp. v. Allen*, this Court provided a list of additional factors that may be considered when deciding whether to pierce a corporate veil:

> (1) Whether there was a failure to collect paid capital; (2) whether the corporation was grossly undercapitalized; (3) the non-issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

584 F. Supp. 386, 397 (1984) (citing, *inter alia, Neese v. Fireman's Fund Ins. Co.*, 386 S.W.2d 918 (1964)). Courts also consider whether the entity has been "used to commit a wrong, fraud or perpetrate a violation of statutory or positive legal duty[.]" *Allen*, 584 F. Supp. at 397.

According to the Gonzalez declaration, both A&E and Synergy are separate and distinct legal entities, both are capitalized properly, both are collected paid in capital, and both were issued unit certificates [Doc. 14, ¶¶ 4-5]. The Gonzalez declaration also states that both A&E and Synergy have multiple members, neither is dominated by one or more individuals, and the corporate assets of each entity have not been diverted by shareholders to the detriment of creditors [*Id.*]. Applying the factors identified above, there is no

9

allegation or evidence that A&E or Synergy were formed so existing liability of another corporation could be transferred and there is no allegation or evidence that A&E and Synergy maintained less than an arm's length relationship during the time period of the agreements. Finally, beyond plaintiff's allegations of unlawful retention, conversion, and unjust enrichment, allegations which are accompanied by minimal supporting facts in the complaint, there is no evidence that either A&E or Synergy have been used to work a fraud or injustice in contravention of public policy.

Accordingly, defendants' request for summary judgment in regard to plaintiff's attempts to pierce the corporate veils of A&E and Synergy will be **GRANTED**.

### C. A&E

#### 1. Common Law Fraud – Tennessee Law

Plaintiff alleges that A&E committed fraud by wrongfully retaining and/or unlawfully converting money that should have been paid to plaintiff [Doc. 1-1, ¶ 8]. Defendants contend that this claim fails because plaintiff is unable to establish any of the elements necessary for a claim of fraud under Tennessee law.

The Court agrees.

To establish a claim for fraud under Tennessee law, a plaintiff must allege with particularity the following elements: "'(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact.'" *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d

10

522, 526 (6th Cir. 2007) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App.2006)); Tenn. R. Civ. P. 9.02 ("Allegations of fraud must be plead with particularity."). "For the purpose of considering a plaintiff's claim of fraud, the terms 'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are synonymous." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 905 n. 1 (Tenn. 1999).

Here, there is no evidence of what "intentional misrepresentation of material fact" was made by A&E in connection with the agreements. There is also no evidence that A&E made a material misrepresentation with knowledge that the misrepresentation was false. Furthermore, while plaintiff has alleged indebtedness allegedly owed by defendants, there is no evidence that this indebtedness was caused by a "reasonable reliance" on an intentional misrepresentation by A&E. Moreover, in addition to the Court being unable to discern what the alleged misrepresentation involved, there is no evidence of whether the alleged misrepresentation involved a past or existing fact.

Accordingly, because plaintiff has not provided evidence supporting the elements for a claim of fraud against A&E, defendants' request for summary judgment will be **GRANTED**.

### 2. Breach of Contract Claims

Plaintiff also alleges breach of contract claims against A&E [Doc. 1-1, ¶ 8]. Plaintiff alleges that paragraphs 3, 9, and 11 of the Interim Agreement were breached by defendants [*Id.* ("under the contracts referenced herein, and in particular under Paragraphs 3, 9, and 11 of said Interim Agreement")]. Plaintiff does not allege that specific portions of the Lease or

11

Case 3:10-cv-00523   Document 18   Filed 05/23/12   Page 11 of 19   PageID #: 194

Management Agreement were breached. In the motion for partial summary judgment, defendants contend that plaintiff's breach of contract claims against A&E in regard to these agreements fail because plaintiff was not a party to either agreement.

According to the Gonzalez declaration, the Lease and Interim Agreements were between Jellico Medical and A&E [Doc. 14, ¶¶ 6, 7]. The Court's review of the agreements partially support this statement.

The Lease Agreement states that it was entered into and executed by A&E and Jellico Medical [*Id.*, Ex. 1]. There is no mention of Synergy or plaintiff in the Lease Agreement. Plaintiff also has not alleged which provision(s) of the Lease Agreement was alleged breached by defendants. Accordingly, finding no dispute that plaintiff was not a party to the Lease Agreement, defendants' request for summary judgment in regard to plaintiff's claim against A&E for a breach of the Lease Agreement will be **GRANTED**.

As to the Interim Agreement, the recitals of that agreement provide as follows:

> **WHEREAS**, the Lease Agreement between A&E . . . and . . . Jellico Medical . . . terminates on April 30, 2009 . . . and therefore, A&E will cease as the operator of Beech Tree Manor . . . ;
>
> **WHEREAS**, . . . [plaintiff] will be the operating entity for [Beech Tree Manor] after April 30, 2009;
>
> **WHEREAS**, A&E will receive all payments from Medicare and Medicaid that originate for billings after April 30, 2009 until the Change of Ownership with the State of Tennessee is complete and the Medicare and Medicaid provider numbers are transferred to plaintiff.

12

[Doc. 14, Ex. 2]. Paragraph twenty (20) of the Interim Agreement states:

> By the signatures below, both A&E and [plaintiff] agree to be bound by the terms of this Agreement and conform that the signators of each entity have authority to bind the company.

[*Id.*]. Executed signature lines below paragraph twenty (20) designate the signators to the agreement as A&E and plaintiff [*Id.*]. Thus, it appears from the terms of the Interim Agreement that it was entered into between A&E and plaintiff—not A&E and Jellico Medical. Accordingly, because the Gonzalez declaration, the terms of the Interim Agreement, and plaintiff's allegations in the complaint that defendants were in breach of "the contracts referenced herein, . . . in particular under Paragraphs 3, 9, and 11 of [the] Interim Agreement[,]" show an issue of disputed fact for plaintiff's claim relating to a breach of the Interim Agreement, defendants' request for summary judgment will be **DENIED**.

According to the Gonzalez declaration, the Management Agreement was between Synergy and plaintiff, and A&E was not a party to that agreement [Doc. 14, ¶ 8]. The Court has reviewed the Management Agreement, and agrees that there is no mention of A&E in that agreement and that A&E is not listed as a signator [*Id.*, Ex. 3]. The Court also notes that plaintiff has not alleged a specific provision of the Management Agreement that was breached. Accordingly, finding no dispute given the terms of the Management Agreement and the statements in the Gonzalez declaration, defendants' request for summary judgment in regard to plaintiff's claim against A&E for a breach of the Management Agreement will be **GRANTED**.

13

Case 3:10-cv-00523   Document 18   Filed 05/23/12   Page 13 of 19   PageID #: 196

### D. Synergy

#### 1. Common Law Fraud – Florida Law

Plaintiff alleges that Synergy committed fraud by wrongfully retaining and/or unlawfully converting money that should have been paid to plaintiff [Doc. 1-1, ¶ 8]. Defendants contend that plaintiff's claim for fraud fails because plaintiff is unable to establish any of the elements necessary for a claim of fraud under Florida law.

The Court agrees.

The elements of a claim for fraud under Florida law are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied upon the false statement to its detriment. *2002 Irrevocable Trust for Richard C. Hvizdak v. Huntington Nat. Bank*, No. 2:08-cv-556-FtM-99DBF, 2008 WL 5110778, at *6 (M.D. Fla. Dec. 1, 2008) (citing *Rose v. ADT Sec. Services, Inc.*, 989 So. 2d 1244, 1247 (Fla. Dist. Ct. App. 1st Dist. 2008)).

Similar to the Court's analysis of plaintiff's claim of fraud against A&E, there is no allegation or evidence of a "false statement of material fact" by Synergy, whether the maker of the statement knew of its falsity, whether the maker intended the false statement to induce plaintiff's reliance, or whether plaintiff justifiably relied upon the false statement. Thus, defendants' request for summary judgment will be **GRANTED**.

14

### 2. Unjust Enrichment

Plaintiff also alleges a claim for unjust enrichment against Synergy based on "an audit . . . conducted of the accounts relative to" and "the contracts referenced herein[,]" particularly "Paragraphs 3, 9, and 11 of said Interim Agreement" [Doc. 1-1, ¶ 8]. Defendants have moved for summary judgment on this claim.[2]

In *Godwin Pumps of Am., Inc. v. Ramer*, the Middle District of Florida stated what was needed to succeed on a claim for unjust enrichment under Florida law. "[A] plaintiff must show: (1) it conferred a benefit on the defendant of which the defendant is aware, (2) the defendant voluntarily accepted and retained the benefit conferred, and (3) the circumstances would make it inequitable for the defendant to retain the benefit without paying for it." No. 8:11-cv-00580-T-24-AEP, 2011 WL 2181183, at *3 (M.D. Fla. Jun. 3, 2011) (citing *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006-07 (11th Cir. 2004)). Defendants assert that summary judgment is proper on plaintiff's unjust enrichment claim because under Florida law, "[a] claim for the equitable remedy of unjust enrichment may not be brought if the parties have a valid contract covering the same subject matter as the unjust enrichment claim." *Id.* (dismissing an unjust enrichment claim with prejudice and noting that the plaintiff had alleged an express contract covering the same subject matter as the unjust enrichment claim) (quoting *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1265 (M.D. Fla. 2010)); *see also Restrepo v. Wells Fargo Bank, N.A.*, No. 09-224-36-

---

[2]Defendants have not moved for summary judgment in regard to plaintiff's claim for unjust enrichment against A&E.

15

CIV, 2010 WL 374771, at *3 (S.D. Fla. Feb. 3, 2010) (dismissing an unjust enrichment claim with prejudice and noting that the plaintiff had alleged the existence of an express contract and had attached that contract to the complaint); *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007) (holding that a quasi-contractual claim of unjust enrichment fails upon a showing that an express contract exists).

According to the terms of the agreements referenced in the complaint, there was at least one valid agreement existing between Synergy and plaintiff—the Management Agreement. However, the only specific allegations in the complaint regarding the agreements pertains to the Interim Agreement [Doc. 1-1, ¶ 8], and there are no alleged or submitted facts showing that plaintiff's claim of unjust enrichment pertains to the subject matter of the Management Agreement. Thus, to the extent plaintiff has alleged a claim for unjust enrichment claim against Synergy, the Court finds defendants' request for summary judgment well-taken and it will be **GRANTED**.

### 3. Conversion

Plaintiff also alleges a claim for conversion against Synergy [Doc. 1-1, ¶ 8]. Defendants have moved for summary judgment on this claim as well.[3]

Conversion is defined under Florida law as:

> [A]n act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. In essence, conversion is an unauthorized act which deprives another of his property permanently

---

[3] Defendants have not moved for summary judgment in regard to plaintiff's claim for conversion against A&E.

16

Case 3:10-cv-00523 Document 18 Filed 05/23/12 Page 16 of 19 PageID #: 199

> or for an indefinite time. It is the disseisin of the owner or an
> interference with legal rights which are incident to ownership, such as
> a right to possession.

*Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-80633-CIV, 2008 WL 660100 (S.D. Fla. Mar. 7, 2008) (quoting *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, 125 F. Supp. 2d 1093, 1099-1100 (S.D. Fla. 2000) (citations omitted). Florida courts have identified three elements necessary to state a claim for conversion: (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *Id.*; *Warshall v. Price*, 629 So.2d 903, 904 (Fla. Dist. Ct. App.1993) (analyzing elements to find that the plaintiff had established a conversion claim). In addition, to establish a claim for the conversion of money, there must exist a specific fund capable of separate identification. *Prime One Capital Co.*, 125 F. Supp. 2d at 1100; *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. Dist. Ct. App.1970). Florida courts have stated, "[t]o be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1542 (S.D. Fla.1989) (quoting *Belford Trucking v. Zagar*, 243 So.2d 646 (Fla. Dist. Ct. App. 1970)). Money is capable of identification where it is delivered "at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit[.]" *Id.*

As noted above, plaintiff alleges that paragraphs 3, 9, and 11 of the Interim Agreement created the right to the money plaintiff claims was unlawfully converted by defendants [Doc.

17

1-1, ¶ 8]. As noted above, the Interim Agreement provides that A&E and plaintiff were the parties to the agreement—not Synergy [Doc. 14, Ex. 2]. Thus, having no evidence of the necessary elements to support plaintiff's claim of conversion against Synergy, defendants' request for summary judgment on this claim will be **GRANTED**.

### 4. Breach of Contract Claim

Plaintiff alleges that Synergy is liable for breach of contract [Doc. 1-1, ¶ 8]. Defendants have moved for summary judgment on this claim, asserting that plaintiff has improperly lumped A&E and Synergy together, along with the three agreements referenced in the complaint. Defendants contend that the only agreement to which Synergy is a party—the Management Agreement—does not form the basis for a breach of contract claim because plaintiff has only alleged that paragraphs 3, 9, and 11 of the Interim Agreement were breached, an agreement Synergy was not a party to, and has alleged no other facts and submitted no other evidence regarding a breach of the other agreements [*Id.* ("under the contracts referenced herein, and in particular under Paragraphs 3, 9, and 11 of said Interim Agreement"). The Court has previously noted that Synergy was not a party to the Interim Agreement. The Court has also noted that there is no allegation in the complaint describing any alleged breach of the Management Agreement and no evidence in support of such a claim. Thus, given the lack of allegations in the complaint involving the Management Agreement, the contents of the Gonzalez declaration, and the Court's review of the agreements and evidence submitted by defendants, defendants' request for summary judgment on this claim will be **GRANTED**.

18

## IV. Conclusion

For the reasons given above, the Motion for Partial Summary Judgment [Doc. 12] by A&E and Synergy will be **GRANTED in part** and plaintiff's fraud claim and claim for breach of the Lease and Management Agreements against A&E will be **DISMISSED**. All of plaintiff's claims against Synergy will be **DISMISSED**. The motion is **DENIED in part**, to the extent that plaintiff's claim for breach of the Interim Agreement against A&E will not be dismissed. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
